UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERTA FEINSTEIN, On Behalf of Herself and All Others Similarly Situated, | § § § | |
| | § | CIVIL ACTION NO. 4:14-cv-521 |
| Plaintiff, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| | § | |
| EAGLE ROCK ENERGY PARTNERS, L.P., WILLIAM A. SMITH, PHILIP B. SMITH, WILLIAM F. QUINN, HERBERT C. WILLIAMSON III, PEGGY A. HEEG, WILLIAM K. WHITE, JOSEPH A. MILLS, DAVID W. HAYES, CHRISTOPHER D. RAY, REGENCY ENERGY PARTNERS, L.P., and REGAL MIDSTREAM, LLC, | § § § § § § § § § | |
| Defendants. | § § | |

**CLASS ACTION COMPLAINT FOR BREACH OF
FIDUCIARY DUTY AND INDIVIDUAL CLAIMS FOR
VIOLATION OF SECTIONS 14(a) AND 20(a) OF
SECURITIES EXCHANGE ACT OF 1934**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Roberta Feinstein (the "Plaintiff"), on behalf of herself and all others similarly situated, by her attorneys, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge:

**NATURE AND SUMMARY OF THE ACTION**

1.      Plaintiff brings this action individually and on behalf of the unitholders of Eagle Rock Energy Partners, L.P. ("Eagle Rock" or the "Partnership") to enjoin the acquisition of Eagle Rock's midstream oil and natural gas assets by Regency Energy Partners, L.P. ("Regency") through Regal Midstream LLC ("Merge Sub"), Eagle Rock's wholly-owned subsidiary, for inadequate consideration as detailed herein (the "Exchange Offer").  On

December 23, 2013, Eagle Rock and Regency announced that they had entered into a definitive Contribution Agreement (the "Contribution Agreement") pursuant to which Eagle Rock will sell certain midstream assets to Regency in exchange for $1.3 billion.

2.      Under the Exchange Offer, Regency is exchanging $550 million of Eagle Rock debt (in the form of outstanding senior unsecured notes) for an equivalent amount of Regency senior unsecured notes. Eagle Rock will also receive $200 million of newly-issued common units and approximately $520 million in cash from Regency.

3.      The Exchange Offer represents inadequate consideration, in a process that is tainted by conflict and is procedurally flawed.  Each of the Defendants, as defined herein, violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith, fair dealing and complete candor.

4.      Rather than permitting the Partnership to continue with its highly successful midstream business and allow its public unitholders to reap the benefits of the Partnership's increasingly positive trajectory, the Individual Defendants, as defined herein, acted for their own benefit and the benefit of Regency, and to the detriment of the Partnership's unitholders, by entering into the Contribution Agreement.

5.      In facilitating the Exchange Offer for inadequate consideration and through a flawed sales process, each of the Defendants breached and/or aided the other defendants' breaches of their fiduciary duties of loyalty, due care, independence, disclosure, good faith and fair dealing.  The Individual Defendants, as defined herein, have exacerbated their breaches of fiduciary duty by agreeing to lock up the Exchange Offer with restrictive deal protection devices. For example, the Board of Directors (the "Board") agreed to: (i) a "no solicitation" provision that

prevents the Partnership from negotiating with or providing confidential information to competing bidders except under extremely limited circumstances; (ii) a "matching rights" provision that allows Regency three (3) calendar days to match any competing proposal in the unlikely event that one emerges; and (iii) a termination fee of $42.1 million to be paid to Regency if the Board agrees to a competing proposal.  These provisions conjunctively and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives to the Exchange Offer.

6.      In an attempt to induce unitholder approval of the unfair Exchange Offer, Defendants caused to be filed with the Securities and Exchange Commission ("SEC") an inadequate and misleading Preliminary Proxy Statement (the "Proxy Statement") on January 31, 2014, in advance of an anticipated unitholder vote by Eagle Rock unitholders.  As discussed in further detail herein, the Proxy Statement fails to provide unitholders with the essential information that is needed in order to cast an informed vote on the Exchange Offer.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Exchange Offer, or in the event the Exchange Offer is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith, due care and disclosure.

7.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin the Defendants from taking any steps to consummate the Exchange Offer or, in the event the Exchange Offer is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith, due care and complete candor.

## JURISDICTION AND VENUE

8.      Each of the Individual Defendants owes fiduciary duties of loyalty, good faith, fair dealing, due care and complete candor to Plaintiff and the other members of the Class

(defined below).  They are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Exchange Offer.

9.      This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C § 1331 in that Plaintiff's claims arise in part under the Constitution and laws of the United States, including the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the Defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Given that the Exchange Offer is valued at over $1.3 billion, the injunctive relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more of the defendants, including Eagle Rock, either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, occurred in substantial part in this District.  Finally, the Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

### THE PARTIES

12.     Plaintiff is, and has been at all relevant times, a unitholder of Eagle Rock units.

13.     Defendant Eagle Rock is a Delaware limited partnership, with its corporate headquarters located at 1415 Louisiana Street, Suite 2700, Houston, Texas, 77002.  Eagle Rock, together with its subsidiaries, engages in gathering, compressing, treating, processing, transporting, marketing, and trading natural gas, as well as fractionating and transporting natural gas liquids (NGL).  It is also involved in the crude oil and condensate logistics and marketing

activities.  The Partnership has natural gas gathering and processing assets in the Texas Panhandle, east Texas/Louisiana, south Texas, and the Gulf of Mexico.

14.     Defendant William A. Smith ("Smith") has been a director of the Partnership since September 2007.  Smith also is a member of the board of directors of other Eagle Rock subsidiaries.

15.     Defendant Philip B. Smith ("P. Smith") has been a director of the Partnership since October 2006.  P. Smith also is a member of the board of directors of other Eagle Rock subsidiaries.

16.     Defendant William F. Quinn ("Quinn") has been a director of the Partnership since March 2006.  Quinn is also a member of the board of directors of other Eagle Rock subsidiaries.

17.     Defendant Herbert C. Williamson III ("Williamson") has been a director of the Partnership since July 2010.  Williamson is also a member of the board of directors of other Eagle Rock subsidiaries.

18.     Defendant Peggy A. Heeg ("Heeg") has been a director of the Partnership since July 2010.  Heeg is also a member of the board of directors of other Eagle Rock subsidiaries.

19.     Defendant William K. White ("White") has been a director of the Partnership since October 2006.  White is also a member of the board of directors of other Eagle Rock subsidiaries.

20.     Defendant Joseph A. Mills ("Mills") has been the Chairman and Chief Executive Officer of the Partnership since May 2007.  Mills is also the Chairman and Chief Executive Officer of Eagle Rock Energy G&P LLC, an affiliate of Eagle Rock.  Mills has been a director of the Partnership since May 2007.

21.     Defendant David W. Hayes ("Hayes") has been a director of the Partnership since November 2011.  Hayes is also a member of the board of directors of other Eagle Rock subsidiaries.

22.     Defendant Christopher D. Ray ("Ray") has been a director of the Partnership since June 2011.  Ray is also a member of the board of directors of other Eagle Rock subsidiaries.

23.     Defendants Smith, P. Smith, Quinn, Williamson, Heeg, White, Mills, Hayes and Ray are collectively referred to hereinafter as the "Individual Defendants" or the "Board."

24.     Each of the Individual Defendants herein is sued individually, and in his or her capacity as a director of the Partnership, and the liability of each rises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

25.     Defendant Regency is a Delaware limited partnership that engages in the gathering, treating, processing, compressing, and transporting natural gas and natural gas liquids (NGLs).  The company operates in Gathering and Processing, Natural Gas Transportation, NGL Services, and Contract Services segments.  Regency's headquartered at 2001 Bryan Street, Suite 3700, Dallas, Texas, 75201.

26.     Defendant Merger Sub is a Delaware limited liability company and wholly-owned subsidiary of Regency.

27.     Collectively, the Individual Defendants, Eagle Rock, Regency and Merger Sub are referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Eagle Rock common units

who are being and will be harmed by the Defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

29.     This action is properly maintainable as a class action for the following reasons:

a.      The Class is so numerous that joinder of all members is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time and can be ascertained through appropriate discovery, as of October 31, 2013, approximately 159,591,063 units of the Partnership's common units were outstanding.  The holders of these units are believed to be geographically dispersed throughout the United States;

b.      There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia* the following:

i.      Whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Exchange Offer;

ii.     Whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Exchange Offer;

iii.    Whether the Individual Defendants have breached any of their fiduciary duties to Plaintiff and the other members of the Class in connection with the Exchange Offer, including the duties of good faith, diligence, and fair dealing;

iv.     Whether the Individual Defendants are engaging in self-dealing in connection with the Exchange Offer under Delaware law;

v.      Whether the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the Exchange Offer;

vi.     Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Partnership or its assets; and

vii.    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

c.     Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

d.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede the ability to protect their interests; and

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**A.**    **Background**

30.    Based in Houston, Texas, Eagle Rock specializes in the development, gathering, compressing, treating, processing, transporting, and selling of natural gas.  The Partnership owns over 8,000 miles of natural gas gathering pipelines, fractionates and transports natural gas liquids (NGLs), and earns income from holdings in oil and gas properties.  Its natural gas gathering and processing assets include the Texas Panhandle, East Texas/Louisiana, West Texas, South Texas,

8

and the Gulf of Mexico. It also has exploration and production assets in Alabama, Louisiana, Mississippi, and Texas, and has proved reserves of 127.8 billion cu. ft. of natural gas of equivalent.

31.     Eagle Rock's crown jewel is its "Midstream" natural gas business.   This Midstream business is located in four natural gas producing regions: the Texas Panhandle; East Texas/Louisiana; South Texas, and the Gulf of Mexico.   As of December 31, 2011, these working interest properties included 591 gross operated productive wells and 1,197 gross non-operated wells with net production to the Company of approximately 87.7 million cubic feet of natural gas per day and proved reserves of approximately 234.0 Bcf of natural gas, 11.5 million barrels of crude oil or other liquid hydrocarbons of crude oil, and 11.3 million barrels of crude oil or other liquid hydrocarbons of natural gas liquids, of which 76% are proved developed.   As of December 31, 2011, the Midstream business consisted of the Panhandle Segment and East Texas and Other Midstream Segment.

32.     Over the previous years, the Partnership has enjoyed strong continuous revenue growth which has been mainly attributable to Eagle Rock's Midstream Business.   On February 25, 2013, Eagle Rock released positive financial results for 2012.   Specifically, the Partnership reported adjusted EBITDA of $245.8 million, an increase of 18% from the $208.2 million the Company reported for 2011.   Eagle Rock's Midstream assets directly contributed to the positive growth.   Eagle Rock's Defendant Mills, Eagle Rock's CEO, in commenting on the positive results stated that "During 2012, we significantly expanded our Midstream position in the Texas Panhandle through our Panhandle Acquisition and execution of a 20-year fixed-fee gathering and processing agreement with BP. In addition, we announced a substantial new area dedication by Anadarko Petroleum Corporation in Western Louisiana and successfully

developed a portion of our attractive upstream drilling inventory in the SCOOP area of western Oklahoma."  Mills further stated that "As we look forward to 2013, we continue to be excited about growing our gathering footprint around our newly-acquired assets in the Texas Panhandle as well as realizing the full resource potential of our Mid-Continent Upstream portfolio."

**B.      The Exchange Offer**

33.      Despite the financial success the Midstream business has bestowed on Eagle Rock unitholders, the Partnership decided to sell its crown jewel to Regency for inadequate consideration through a flawed sales process.  On December 23, 2013, Eagle Rock and Regency issued a joint press release announcing that they had entered into a Contribution Agreement.  The press release stated, in relevant part:

> HOUSTON, TX — Eagle Rock Energy Partners, L.P. (NASDAQ:EROC) announced today that it has entered into a definitive agreement to contribute its midstream business to Regency Energy Partners LP (NYSE: RGP)("Regency") for total consideration of up to $1.325 billion.
>
> Highlights of the transaction, which has been unanimously approved by the Board of Directors, include the following:
>
> • Eagle Rock will receive total consideration of up to $1.325 billion, subject to certain closing conditions, consisting of $200 million of newly-issued Regency common units and a combination of cash and assumed debt
>
> • Regency will conduct an offer to exchange Eagle Rock's $550 million of outstanding senior unsecured notes into an equivalent amount of Regency senior unsecured notes with the same tenor, coupon and a comparable covenant package. The cash portion of the purchase price will be reduced by the amount of notes exchanged subject to a 10% adjustment factor such that if all $550 million of bonds are exchanged, the total consideration will equal $1.27 billion ($1.325 billion less $55 million) consisting of $200 million in Regency units, $550 million of assumed debt and $520 million of cash proceeds
>
> Following the consummation of the transaction, which is expected to close in the first half of 2014, Eagle Rock will be a pure-play upstream MLP with a strong balance sheet and ample liquidity for future growth. The Partnership intends to use the cash proceeds from the contribution of its midstream business to pay

down borrowings under its revolving credit facility. Pro-forma for the sale, the Partnership anticipates its Total Leverage Ratio will be under 1.75x.

"This transaction is consistent with our stated goals of simplifying our structure and reducing our debt balances," said Joseph A. Mills, Eagle Rock's Chairman and Chief Executive Officer. "We are excited to announce this transformative transaction for Eagle Rock, which unlocks the value of our midstream business and positions the Partnership for future growth as a pure-play upstream MLP."

34.     As Regency is undoubtedly aware, Eagle Rock is expected to continue to have strong revenue growth in 2014 and beyond.  The Exchange Offer will make Regency one of the leading midstream natural gas players in the industry.   Following the announcement, Mike Bradley, Chief Financial Officer of Regency stated that "This acquisition represents another attractive growth opportunity for Regency and is very strategic to our plans to increase our scale and expand our basin diversity in liquids-rich areas."

35.     The consideration offered in the Exchange offer is unfair and grossly inadequate because, among other things, the intrinsic value of Eagle Rock's Midstream assets are materially in excess of the amount offered given the Company's increased earnings and potential growth. Given the Partnership's promising future growth and earnings prospects, Eagle Rock is attempting to strip substantial value out of the partnership to the detriment of Eagle Rock unitholders.

## C.     The Unreasonable Deal Protection Devices

36.     As part of the Contribution Agreement, the Individual Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Exchange Offer a fait accompli and ensure that no competing offers will emerge for the Midstream business.

37.     First, the Contribution Agreement contains a strict "no solicitation" provision prohibiting the Individual Defendants from taking any affirmative action to comply with their

fiduciary duties to maximize unitholder value, including soliciting alternative acquisition proposals or business combinations.

38.     Specifically, § 5.4 of the Contribution Agreement includes a "no solicitation" provision precluding the Partnership from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Regency.  Section 5.4(a) requires that the Partnership "immediately cease and cause to be terminated any discussions or negotiations with any Person conducted heretofore with respect to an Alternative Proposal, and request the return or destruction of all confidential information previously provided to such parties by or on behalf of the Contributor or its Subsidiaries."  This provision is especially harmful to Eagle Rock unitholders in light of the fact that no go-shop period was agreed to by the Individual Defendants.

39.     Additionally, § 5.4(b) of the Contribution Agreement provide a matching rights provision, whereby the Partnership must promptly notify Regency within seventy-two (72) hours should it receive an unsolicited competing acquisition proposal.  The Partnership must notify Regency of the bidder's identity and the terms of the bidder's offer.  Thereafter, if the Board determines that the competing acquisition proposal constitutes a "Superior Proposal," the Board to grant Regency three (3) calendar days to amend the terms of the Contribution Agreement to make a counter-offer that the Partnership must consider in determining whether the competing bid still constitutes a "Superior Proposal."

40.     The effect of these provisions is to prevent the Board from entering discussions or negotiations with other potential purchasers unless the Board can first determine that the competing acquisition proposal is, in fact, "superior," and even then, the Partnership must give Regency three (3) calendar days to match the competing acquisition proposal.  Consequently,

this provision prevents the Individual Defendants from exercising their fiduciary duties and precludes an opportunity for a potential purchaser to emerge.

41.     Additionally, the Contribution Agreement provides that Eagle Rock must pay Regency a termination fee of $42.1 million if the Partnership decides to pursue the competing offer.  This unreasonable termination fee will ensure that no competing offer will appear, as any competing bidder would essentially pay a premium for the right to provide the unitholders with a superior offer.

**D.     The Individual Defendants Have Failed to Disclose Material Information Regarding the Exchange Offer**

42.     On January 31, 2014, Eagle Rock filed the Proxy Statement with the SEC in connection with the Exchange Offer.  The Proxy Statement, however, fails to provide the Partnership's unitholders with all material information concerning the Exchange Offer, thus precluding Eagle Rock unitholders from making an informed decision.  Most notably, the Proxy Statement omits, among other things, the Partnership's entire set of financial projections for years 2014 through 2018 which were prepared by Eagle Rock management and provided to the Partnership's sophisticated financial advisors, Evercore Group, L.L.C. ("Evercore") and Citigroup Global Markets Inc. ("Citigroup").  By operation of Delaware law, the disclosure of financial projections are required to be disclosed since they are highly material to Eagle Rock unitholders.

43.     Additionally, the Proxy Statement does not disclose the underlying methodologies, key data and inputs relied upon by Evercore and Citigroup in rendering their Fairness Opinions.  This material information must be disclosed so that unitholders can properly assess the credibility of the various analyses performed by Evercore and Citigroup.  At a minimum, the Proxy Statement must disclose, *inter alia*, the following:

(a)      In Evercore's *Discounted Cash Flow Analysis*, (i) the basis for the calculations of the weighted average cost of capital ("WACC") analysis utilized to calculate the discount rate range; (ii) the rationale for selecting an EBITDA multiple range of 9.0x to 11.0x, an 8.5% to 9.5% discount rate range and a 1.5% and 2.5% perpetuity growth rate range and (iii) whether NOL(s) and/or stock based compensation was part of analysis;

(b)      In Evercore's *Precedent M&A Transaction Analysis*, (i) the criteria used to determine which transactions were "relevant;" (ii) the Enterprise Value to EBITDA multiples observed for each transaction; (iii) the rationale for applying a 9.0% discount rate to the 2014 and 2015 growth capital expenditures and (iv) whether other multiples were observed;

(c)      In Evercore's *Peer Group Trading Analysis*, (i) the Enterprise Value to EBITDA multiples for each of the selected companies for years 2014 and 2015; (ii) the "relevant range of selected multiples to the corresponding financial data of the Midstream Entities" and (iii) whether other multiples were observed;

(d)      In Citigroup's *Selected Public Companies Analysis*, (i) the enterprise values calculated by Citigroup for each selected company; (ii) the rationale supporting Citigroup's decision to apply a selected range of 2014 and 2015 estimated EBITDA multiples of 9.5x to 11.5x and 9.0x to 10.0x; (iii) the rationale supporting Citigroup's decisions to select 2014-2015 estimated distributable cash flow multiples of 9.0x to 12.0x and 9.0x to 12.0x and (iv) whether other multiples were observed;

(e)      In Citigroup's *Discounted Cash Flow Analysis*, (i) the rationale for applying a range of terminal value EBITDA multiples of 9.5x to 11.5x; and (ii) the rationale for applying a discount rate range of 9.3% to 10.7%;

(f)     In Citigroup's *Selected Precedent Transactions Analysis*, (i) the criteria used to determine which transactions were "relevant;" (ii) the overall value of each selected transaction; (iii) the next twelve month estimated EBITDA multiples observed in each transaction.

44.     Specifically, the Proxy Statement fails to provide material information concerning the process conducted by Eagle Rock and the events leading up to the Exchange Offer with Regency.  In particular, the Proxy Statement fails to disclose the following information:

45.     Also, the *Background of the Contribution* section of the Proxy Statement contains the following material omissions:

(a)     The rationale for hiring two financial advisors;

(b)     Whether there was a conflict check was conducted before engaging Evercore and Citigroup as financial advisors;

(c)     The dates on which Evercore and Citigroup were retained by the Board;

(d)     Whether Evercore and/or Citigroup have provided prior financial services to either Eagle Rock or Regency and if so, a description of those services as well as the financial compensation Evercore and/or Citigroup received;

(e)     The "potential conflicts of interest" that were discussed at the May 14, 2013 Board meeting;

(f)     The members of Eagle Rock's "Conflicts Committee" and the criteria used to select them as Conflict Committee members;

(g)     The names of the Board members who were impaired by the "Potential Regency Ownership Conflict" as well as a description of their respective holdings in Regency;

(h)     The number of total companies that were contacted during the "third-party solicitation process" as well as the criteria used to contact those companies;

(i)     Whether any members of Eagle Rock's management or Board have secured future employment with Regency and

(j)     Whether Regency had discussions with Eagle Rock's management or the Individual Defendants' prior to December 23, 2013.

46.     The information requested above collectively amounts to the key inputs necessary for one to be able to evaluate and understand the sales process and analysis rendered in connection with the Exchange Offer.  Therefore, the aforementioned omitted information is highly relevant and material to Eagle Rock unitholders.

47.     Accordingly, because the foregoing process and material omissions represent a violation of state law, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Partnership unitholders have and will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against the Individual Defendants
for Breach of Fiduciary Duties**

48.     Plaintiff repeats and realleges each allegation set forth herein.

49.     The Individual Defendants have violated fiduciary duties of care, loyalty, good faith and complete candor owed to Eagle Rock unitholders.

50.     By the acts, transactions and courses of conduct alleged herein, the Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Eagle Rock.

51.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, complete candor and independence owed to Eagle Rock unitholders because, among other reasons, they failed to take steps to maximize the value of Eagle Rock's unitholders, by, among other things, failing to adequately consider potential acquirers, instead favoring their own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of Eagle Rock's unitholders.   Moreover, the Individual Defendants failed to secure safeguards on behalf of the Partnership's unitholders against the decline in the value of the stock component of the consideration to be paid to Eagle Rock's unitholders in the Exchange Offer.

52.     Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the Exchange Offer.

53.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

54.     As a result of the actions of the Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Eagle Rock's assets and businesses and have been and will be prevented from obtaining a fair price for their common units.

55.     Unless the Court enjoins the Defendants, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

56.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff and the Class Against Eagle Rock, Regency and Merger Sub for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty

57.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

58.     Eagle Rock, Regency and Merger Sub have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Eagle Rock's unitholders, and have participated in such breaches of fiduciary duties.

59.     Eagle Rock, Regency and Merger Sub knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Eagle Rock, Regency and Merger Sub rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Exchange Offer in breach of their fiduciary duties.

## COUNT III

### On Behalf of Plaintiff for Violations of Sections 14(a) of the Exchange Act Against the Partnership and the Individual Defendants

60.     Plaintiff brings this Exchange Act claim on behalf of herself as an individual.

61.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.     The Defendants have issued the Proxy Statement with the intention of soliciting unitholder support for the Exchange Offer.

63.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with unitholders shall not contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

64.     Specifically, the Proxy Statement violates Section 14(a) and Rule 14a-9 because it omits material facts as set forth *supra*.  Moreover, in the exercise of reasonable care, the Defendants should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render it non-misleading.

65.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Exchange Offer.  As a direct and proximate result of the Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT IV

### On Behalf of Plaintiff for Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

66.     Plaintiff brings this Exchange Act claim on behalf of herself as an individual.

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of Eagle Rock within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Eagle Rock, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did

influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

69.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Merger.  Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

71.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

72.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule

14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling

persons, the Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct

and proximate result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

74.    Plaintiff has no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally, as follows:

A.    Declaring this action to be a Class Action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

B.    Enjoining the Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Exchange Offer, unless and until the Partnership adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for unitholders;

C.    Enjoining the Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Exchange Offer, unless and until the Partnership discloses all material information;

D.    Rescinding, to the extent already implemented, the Exchange Offer or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

E.    Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

F.    Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance for attorneys' and expert fees and expenses; and

G.    Granting Plaintiff and other members of the Class such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.


DATED:  March 3, 2014.

                                  Respectfully submitted,


                                   */s/ Thomas E. Bilek*
                                 THOMAS E. BILEK
                                 TX Bar No. 02313525 / SDTX Bar No. 9338
                                 **THE BILEK LAW FIRM, L.L.P.**
                                 700 Louisiana, Suite 3950
                                 Houston, TX  77002
                                 (713) 227-7720
                                 FAX (713) 227-9404

                                 *Attorneys for Plaintiff*


**OF COUNSEL:**

Juan E. Monteverde
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, Tenth Floor
New York, NY  10017
Tel:  212-983-9330
Fax:  212-983-9331